UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-10147-CIV-GOODMAN
[CONSENT CASE]

SCHEU & SCHEU, INC.,

    Plaintiff,

v.

CASEY SCHEU, VERONICA SCHEU,
and APE.COM, LLC,

    Defendants.
_____/

# OMNIBUS ORDER DENYING SUMMARY JUDGMENT MOTION AS TO COUNTS I AND IV OF THE COMPLAINT AND DENYING MOTION TO STRIKE DECLARATION

Juliet cared little that her beloved Romeo was a Montague, and not a Capulet, when she exclaimed, "A rose by any other name would smell as sweet."[1] But in trademark law -- as it also turned out in Shakespeare's tragic love story -- names carry consequences. Label a product or service with a moniker that is not distinctive, but merely generic or descriptive, and the law may not protect your mark.

That is what Defendants Casey Scheu; Veronica Scheu; and APE.com, LLC contend in their summary judgment motion. Defendants move for summary judgment on Counts I and IV of Plaintiff Scheu & Scheu, Inc.'s Complaint, which raise claims

---

[1] WILLIAM SHAKESPEARE, ROMEO AND JULIET act 2, sc. 2.

against Defendants for trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for violating the Anticybersquatting Consumer Protection Act ("ACPA"), § 1125(d). [ECF No. 61]. Defendants argue that the trademarks Plaintiff seek to guard are generic marks, or at best, descriptive marks without a secondary meaning, and therefore, are not entitled to legal protection. As an additional wrinkle, Defendants move to strike a declaration Plaintiff relies on to oppose summary judgment.

For the reasons discussed below, the Court **denies** both Defendants' summary judgment motion and their motion to strike.

I.  **Factual and Procedural History**

Plaintiff sued Defendants under various federal and state-law claims, stemming from Defendants' alleged infringement of Plaintiff's trademarks: "APE," "A.P.E.," and related domain names. [ECF No. 1]. As Defendants conceded in their Answer, Plaintiff "has been in the business of circuit board repair and related services including, but not limited to, the sale of machinery and parts utilized in such repair for some period of time." [ECF No. 10 ¶ 9]. Under Count I of the Complaint, Plaintiff brought a claim for trademark infringement under the Lanham Act, and under Count IV, a claim for violations of the ACPA. [ECF No. 1, pp. 7–9, 12–13]. The remaining claims (arising from state law) are not implicated here.

Defendants seek summary judgment on both federal-law claims. [ECF No. 61]. Defendants incorporate into the summary judgment motion their statement of

undisputed facts, setting forth just seven facts. [ECF No. 61, p. 3]. Plaintiff admits the following four facts, with minimal caveats: (1) that "A.P.E." is an acronym for "Automated Production Equipment;" (2) that the APE mark may be phonetically pronounced with a "long a," meaning, the same as the word "ape" when speaking of primates; (3) that Plaintiff does not mind Defendants using the word "ape" when referencing large primates;[2] and (4) that Plaintiff's website includes its company's name as "Automated Production Equipment" followed by "A.P.E." in parenthesis. [ECF No. 72, pp. 4–5].

As to the facts Plaintiff disputes, all are essentially aimed to show, in Defendants' view, that the APE marks and the name "Automated Production Equipment" always go hand-in-hand, in all advertisement and marketing. First, Defendants posit as an undisputed fact that "Plaintiff's company has evolved to 'where it is Automated Production and Equipment with A.P.E.'" [ECF No. 61, p. 3]. Second, Defendants say that it is undisputed that "[a]ll marketing and advertising [for Plaintiff] includes 'all of' the purported marks, including the words 'Automated Production Equipment.'" [ECF No. 61, p. 3]. And third, Defendants maintain that no one disputes that "[a]ll of the purported marks are used interchangeably." [ECF No. 61, p. 3].

---

[2] Defendants do not explain why the pronunciation of "APE" or "A.P.E." is significant on summary judgment. Those facts, though undisputed, will bear no significance in the Court's analysis.

Plaintiff does dispute the three facts set forth above. [ECF No. 72, pp. 4–5]. While conceding that the APE mark are sometimes used in association with the tradename "Automated Production Equipment," Plaintiff responds that it "has used, and presently uses, the trademark 'APE' and 'APE.com' in connection with its products where the trade name 'Automated Production Equipment' does not appear." [ECF No. 72, pp. 4, 5]. In support of that refutation, Plaintiff relies on a declaration by Ian Scheu, at paragraphs 18, 22, 23 and 24, which show various uses of the APE marks on advertisements, products, and labels. [ECF No. 72–1, pp. 8–24].

In opposition to Defendants' statement of undisputed facts, Plaintiff also sets forth six additional facts. Pertinent here, Plaintiff asserts that "[t]he trade name 'Automated Production Equipment' was coined and/or arbitrarily chosen by Mr. and Mrs. Scheu so that they could market their products under the equally coined, catchy, abbreviation 'APE.'" [ECF No. 72, p. 5]. As support, Plaintiff cites to deposition testimony from Barbara Schue, where she explained how the "Automated Production Equipment" name was chosen:

> Through the process of renaming the company from Pacenter to Automated Production Equipment we were looking for a name to name our new company since we were no longer going to be using Pacenter. And Automated Production and Equipment was chose mainly because of its initials and the advertising capabilities using APE.

[ECF No. 58, p. 28].

In addition, Plaintiff states that rather than being automated, "Plaintiff's machines are manually operated to remove defective or inoperable surface-mounted electronics components from printed circuit boards, and to remove the solder that holds the components in place, in order to facilitate the replacement of such components." [ECF No. 72, p. 6]. As support, Plaintiff cites to paragraph three of Ian Scheu's declaration, in which he stated, among other things, that Plaintiff's products are operated manually, requiring "a skilled human operator to perform delicate, manual, tasks." [ECF No. 72-1, p. 2].

Plaintiff also adds that "[t]he phrase 'automated production equipment' as applied to Plaintiff's goods and services is arbitrary, as Plaintiff's machines are neither automated nor used to produce any product, nor are they used as part of an automated machine." [ECF No. 72, p. 6]. Relevant here, apart from paragraph three, Plaintiff also relies on paragraph two of Ian Scheu's declaration [ECF No. 72, p. 6], in which he testified as to his parents' innovation in the circuit-board-repair business:

> In the early 1970's, my parents started an innovative circuit board repair service, which immediately led to the invention of the so-called "solder sucker," a machine which allows an operator to efficiently and accurately (but manually) remove soldered-on electronics components and any remaining solder from printed circuit boards so that the components can be replaced, which, in turn, evolved into many of the products that we sell to this day under the trademarks APE, APE.com, A.P.E. and A.P.E.com.

[ECF No. 72-1, p. 1].

Defendants move to strike Ian Scheu's declaration. As to paragraphs two and three of the declaration in particular,[3] Defendants argue that Ian Scheu's "position cannot be maintained in good faith and is contradicted by the very terms of the Declaration." [ECF No. 75, p. 10]. Specifically, Defendants point out that several products, the advertisements for which are attached to the declaration, show several instances where the term "automatic" was used. [ECF No. 75, pp. 10–11]. For its part, while admitting that "*some* of Plaintiff's machines employ settable parameters that Plaintiff's own advertising describes as 'automatic' features," Plaintiff maintains that "those features are nonetheless features of Plaintiff's manually operated machines." [ECF No. 78, p. 12 (emphasis in original)].

**II.    Legal Standard**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation and marks omitted). If the movant establishes the absence of a genuine issue, then the non-movant must "do more

---

[3] Because the Court does not rely on any other portion of Ian Scheu's declaration to deny summary judgment, it will address only whether paragraphs two and three should be struck -- they will not be.

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

For issues on which the opposing party will have the burden of proof at trial, the movant can prevail by merely pointing out that there is an absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

An issue of fact is genuine "if the record taken as a whole could lead a rational tier of fact to find for the nonmoving party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In applying this standard, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the summary judgment motion. *Id.* at 646 (internal citation omitted). Conclusory allegations,

subjective beliefs, opinions, and unsupported assertions, however, are insufficient as a matter of law to withstand summary judgment. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

### III. Analysis

#### A. Distinctiveness Under Trademark Law

Trademarks are protected only when the marks are distinctive. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). Absent a distinctive mark, a plaintiff cannot prevail on a claim of trademark infringement or cybersquatting. *Id.* at 1356; *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006). Some marks are inherently distinctive, while others "acquire distinctiveness by becoming associated in the minds of the public with the products or services offered by the proprietor of the mark[.]" *Welding Servs.*, 509 F.3d at 1357. Although courts may grant summary judgment on the issue of distinctiveness if the undisputed facts warrant it, *see, e.g.*, *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1523 (11th Cir. 1991), "[d]istinctiveness is a question of fact, whether the question is inherent distinctiveness or acquired distinctiveness." *Welding Servs.*, 509 F.3d at 1357.

Four levels of distinctiveness exist, which are, from strongest to weakest: (1) fanciful or arbitrary, (2) suggestive, (3) descriptive, and (4) generic. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1083 (11th Cir. 2016). The Eleventh Circuit has succinctly defined these gradations as follows:

> Fanciful or arbitrary marks "bear no relationship to the product or service," suggestive marks "suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive," descriptive marks "identify the characteristic or quality of a product or service," and generic marks "suggest the basic nature of the product or service."

*Id.* at 1084 n. 5.

For example, fanciful or arbitrary marks may be made-up words crafted to represent a product or service, such as Xerox, Exxon or Kodak. *Tiger Direct, Inc. v. Apple Computer, Inc.*, No. 05-21136-CIV-LENARD, 2005 WL 1458046, at *14, n. 15 (S.D. Fla. May 11, 2005) (setting forth those examples). But arbitrary marks may also be regular, even mundane words, if they bear no logical relationship to the product or service provided. *See MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, No. 11-24110-CIV, 2013 WL 3288039, at *6 (S.D. Fla. June 28, 2013) (finding that the word "situation" was arbitrary when applied to apparel and entertainment services because "the Court [could] discern no relationship between the word 'situation' and the apparel or entertainment services that the plaintiffs provide[d]."); *see also Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev., Inc.*, 824 F. Supp. 1576, 1583 (S.D. Fla. 1993) (using examples of Apple to sell computers, or Ivory to sell soap as opposed to a product made of tusks).

Examples of suggestive marks include Penguin as a mark for a refrigerator company, *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1256 (11th Cir. 2016) (using example as hypothetical); "Barn–Barn" as a mark for a milk-delivery service, *Investacorp*, 931 F.2d at 1523 (same); and "Niles" as a mark for a toy camel,

9

*Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 990 (7th Cir. 2004). In all those examples, a leap (or two) of imagination is needed to connect the mark to the product -- from penguins to an appliance that keeps food cold, from barns to milk, and from the Nile River to camels.

One can also create suggestive marks by combining words that are common in the underlying industry, such as the mark "CrossFit." *See Crossfit, Inc. v. Quinnie*, No. 1:15-CV-04080-WSD, 2017 WL 510896, at *4 (N.D. Ga. Feb. 8, 2017); *CrossFit, Inc. v. 2XR Fit Sys., LLC*, No. CIV. 2:13-1108 KM, 2014 WL 972158, at *5 (D.N.J. Mar. 11, 2014). As one court explained, although "the terms, 'cross' and 'fit,' [] are both commonly associated with exercise and fitness[,] . . . [t]he combination of the terms into a single unique word places the mark in the 'suggestive' category, requiring a leap of the imagination to get from the mark to the product." *Quinnie*, 2017 WL 510896, at *4.

By contrast, examples of marks that identify products without the help of one's imagination -- i.e., merely descriptive marks -- include "Bavaro Palace" as a mark for a hotel in a specific section of beach with the same name, *Bavaro Palace*, 203 F. App'x at 255–56; "Tropic Ocean Airways" as a mark for a plane service that flies people across the ocean to tropical locations, *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 610 (11th Cir. 2014); and "Investacorp" as a mark for a business advising costumers about investments, *Investacorp*, 931 F.2d at 1523. In those cases, the mark tells the consumer

exactly what he or she is in for: a hotel on a particular beach, a flight to the tropics or investment advice.

The legal consequence arising from a descriptive mark is that "[w]hile arbitrary, fanciful, and suggestive marks are considered inherently distinctive and, therefore, are protectable without a showing of secondary meaning, a descriptive mark is not inherently distinctive, and 'receives protection only if it acquires secondary meaning.'" *FN Herstal*, 838 F.3d at 1083 (internal citations omitted). Secondary meaning arises "when the primary significance of the [mark] in the minds of the [consuming] public is not the product but the producer." *Id.* And to make that determination, four factors are considered:

> (1) the length and manner of [the mark's] use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture.

*Id.* at 1083–84. Like the general question of distinctiveness, "[t]he existence of a secondary meaning is a question of fact." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1188 (11th Cir. 2011).

As an example, in *FN Herstal*, the Eleventh Circuit affirmed a judgment following a bench trial, holding that the marks "SCAR" and "SCAR-Stock" -- acronyms for "Special Operations Forces Combat Assault Rifle" -- were protected because they had acquired a secondary meaning. *FN Herstal*, 838 F.3d at 1084–87. The Court applied the

four secondary-meaning factors and concluded, among other things that: (1) even over a relatively short two-year period, the mark had gained wide recognition through millions in sales and promotions at trade shows; and (2) "FN used the SCAR mark on the rifles themselves and in other instances without the accompanying phrase 'Special Operations Forces Combat Assault Rifle.'" *Id.* at 1085–86.

Unlike descriptive marks, however, generic marks can never become distinctive. *Welding Servs.*, 509 F.3d at 1358. There are different ways to determine whether a mark is generic. "By one test, a generic name refers to a particular genus or class of which an individual article or service is but a member." *Id.* (internal quotations omitted). "Still other courts say a generic name depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of the whole." *Id.*

In the *Welding Services* case, the Eleventh Circuit affirmed a summary judgment against a plaintiff -- a company providing welding services called "Welding Services, Inc." -- holding that the plaintiff's name was generic, and its abbreviation had not acquired a meaning distinct from the generic name. *Id.* at 1359–60. The Court first held that the name "Welding Services" was generic because the company, as it set forth in its website and acknowledged in its statement of material facts, actually provided welding services. *Id.* at 1359. The Patent and Trademark Office had even denied the company's trademark application, stating, "Clearly the applicant is providing welding services and [the] proposed mark is generic for the applicant's services." *Id.*

But the analysis did not end there because the company "d[id] not seek protection for the words themselves, but for the abbreviation 'WSI'[.]" *Id.* Turning to that issue, the Eleventh Circuit explained that "[a]bbreviations of generic words may become protectable if the party claiming protection for such an abbreviation shows that the abbreviation has a meaning distinct from the underlying words in the mind of the public." *Id.* The Court concluded that "[t]he only evidence in the record relevant to this question show[ed] Welding Services has not created a separate meaning for the abbreviation[,]" explaining:

> Crucially, exhibit B to Welding Services' statement of material facts shows the logo with the initials on advertising material displayed immediately next to the words "Welding Services Inc." Thus, Welding Services' own motion papers indicate that the abbreviation is used in association with the generic words, rather than being used in a way that would give rise to a meaning distinct from those words. Accordingly, we hold that Welding Services had not shown "WSI" to be protectable.

*Id.*

### B. The "Automated Production Equipment" Name is not Generic as a Matter of Law

Moving to the present case, Defendants argue that the APE marks suffer from the same malady as the WSI mark in the *Welding Services* case, namely, that it is an indistinct acronym of a generic name for Plaintiff's business. The Court, however, disagrees with Defendants' underlying premise. The Court does not find that, as a matter of law, "Automated Production Equipment" is a generic name when applied to Plaintiff's business.

13

Defendants acknowledge that Plaintiff's business is circuit-board repair and the sale of products that repair circuit boards. [ECF Nos. 10 ¶ 9; 61, p. 12].[4] The name "Automated Production Equipment" does not reference circuit boards or even repairs. This case is thus far from analogous to calling a company that provides welding services, "Welding Services, Inc." Had Plaintiff named its company "Circuit Board Repair" or "We Fix Your Circuit Board" or "Solder Off Circuit Board," then Defendants' argument might be convincing. But those are not the facts before the Court.

The conclusion that the name "Automated Production Equipment" does not simply describe Plaintiff's business or services is further supported by the record evidence explaining the name's origin. Barbara Scheu testified that the name was chosen simply because of its catchy acronym, "APE". [ECF Nos. 58, pp. 27–28; 72, p. 5].

---

[4] At one point in their argument, relying on page 175, lines 5 through 7 of Barbara Scheu's deposition testimony, Defendants add that "Plaintiff is indisputably in the business of selling equipment that repairs circuit boards *utilized in automated production*." [ECF No. 61, p. 12 (emphasis added)]. This portion of deposition testimony, however, was not included in Defendants' statement of undisputed facts [ECF No. 61, p. 3], so the Court could disregard it. Still, this portion of testimony does not sway the Court. Barbara Scheu simply said that Plaintiff's niche market services any business that utilizes circuit boards, and although some of the businesses she mentions may include automation, she does not say that. [ECF No. 58, p. 177].

This new fact also highlights an inconsistency in Defendants' argument. At one point, Defendants argue that "Plaintiff's products are automatic and automated." [ECF No. 76, p. 5]. But in the paragraph above, Defendants seemingly suggest that Plaintiff makes "automated production equipment" because the circuit boards it repairs go into things that are themselves automated. [*See* ECF No. 61, p. 12]. Those are two different things. If Defendants' own version of the facts is in conflict, then summary judgment is certainly out of the question.

The name was not chosen so that consumers would think that Plaintiff makes or services or sells automated production equipment. Rather, it was chosen because, in the originators' view, the acronym "APE" had great marketing potential. [ECF Nos. 58, pp. 27–28; 72, p. 5].

Plaintiff, in fact, disputes the very notion that the products it sells constitute "automated production equipment." In paragraphs two and three of his declaration, Ian Scheu avers, among other things, that rather than being "automated," Plaintiff's products are operated **manually**, requiring "a skilled human operator to perform delicate, manual, tasks." [ECF No. 72-1, pp. 1–2]. Thus, there is a genuine issue of material fact as to the nature of Plaintiff's products and services.

The Court rejects Defendants' request that it strike paragraphs two and three of Ian Scheu's declaration on the ground that his "position cannot be maintained in good faith and is contradicted by the very terms of the Declaration." [ECF No. 75, p. 10]. Defendants do admit that "*some* of Plaintiff's machines employ settable parameters that Plaintiff's own advertising describes as 'automatic' features[.]" [ECF No. 78, p. 12 (emphasis in original)]. Still, any contradictions between Ian Scheu's declaration and those marketing examples simply provide fertile ground for cross examination at trial; they do not prevent Plaintiff from raising a genuine issue of material fact. Defendants have cited no authority to show otherwise.

The Court also finds unpersuasive Defendants' attempt to parse out and then combine the various dictionary definitions of "automated," "production," and "equipment." [ECF No. 61, pp. 10–12]. In Defendants' view, the broad definitions of those terms, when combined, "simply describe the class of goods that Plaintiff provides." [ECF No. 61, p. 12]. But while it is true that a generic name may show membership in a product class, *Welding Servs.*, 509 F.3d at 1358, and that "probative of the descriptiveness of a mark is the idea that is conveyed to the observer by the plain dictionary definition of the formatives comprising the mark[,]" *Investacorp*, 931 F.2d at 1523–24, the formatives of "Automated Production Equipment" do not, for several reasons, make Defendants' case.

First, Defendants do not properly define one of the terms. Relying on the Merriam-Webster online dictionary, they define "automated" as "to operate by automation," "to convert to largely automatic operation," to "automate a process" and "to undergo automation." [ECF No. 61, p. 10]. Those definitions, however, pertain to the transitive verb "automate." *Automate*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/automate (last visited June 20, 2017). The actual definitions of the adjective "automated" are "operated automatically," "an automated process," "automated equipment/machinery," and "a fully/highly automated factory." *Automated*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/automated (last visited June 20, 2017). Regardless of the term, however, none of these definitions

16

provide a clue as to Plaintiff's business of circuit board repair or the sale of machinery and parts utilized in such repair.

Second, the dictionary definitions of the term "production," among which Defendants focus on "something produced," "the act or process of producing," and "the creation of utility" are also not helpful. [ECF No. 61, p. 10 (quoting *Production*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/production (last visited June 20, 2017))]. In their reply, Defendants take the definition even further, focusing on two definitions for "utility": "'fitness for some purpose or worth to some end,' [and] 'something useful or designed for use.'" [ECF No. 76, p. 7 (quoting *Utility*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/utility (last visited June 20, 2017))]. Again, nothing about these comprehensive definitions inform the Court about Plaintiff's business of circuit board repair and the sale of related products.

Third, concerning the term "equipment," the Court is also unmoved by the broad definition provided by Defendants: "the set of articles or physical resources serving to equip a person or thing: such as [] the implements used in an operation or activity." [ECF No. 61, p. 11 (quoting *Equipment*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/equipment (last visited June 20, 2017))]. Once more, the Court cannot begin to guess what Plaintiff's business is comprised of based on that definition.

Finally, the mere fact that each term may be commonly used within industries that have some automation or produce some equipment does not mean that, when

17

combined, they are generic as to Plaintiff. *See, e.g., Quinnie*, No. 2017 WL 510896, at *4. The terms may be generic as to some other business, but that does not mean that the terms are also generic as to Plaintiff. *See Breakers of Palm Beach*, 824 F. Supp. at 1583. Ultimately, the Court cannot, based on the record evidence before it, discern a relationship between those words and Plaintiff's business to such an extent as to deny trademark protection on summary judgment. *See MPS Entm't*, 2013 WL 3288039, at *6.

Therefore, the Court finds that Defendants have not established that the "Automated Production Equipment" name is generic as a matter of law.

### C. The "Automated Production Equipment" Name is not Descriptive as a Matter of Law

For similar reasons, Defendants fail to establish on summary judgment that the "Automated Production Equipment" name is merely descriptive of Plaintiff's business. To generate support for a contrary conclusion, the undisputed facts would need to establish a connection, without the aid of imagination, between the name "Automated Production Equipment" and Plaintiff's business of circuit board repair and related services. *See Tropic Ocean Airways*, 598 F. App'x at 610; *Bavaro Palace*, 203 F. App'x at 255–56; *Investacorp*, 931 F.2d at 1523. The facts do not establish such an unfettered connection for summary judgment purposes.

The problem with Defendants' position is that the name "Automated Production Equipment" is so broad and unspecific that it can be made to describe anything if one views it with a wide lens. If a company makes something, then one can say that it is

18

engaged in production. If a business makes a machine or tool, then one may argue that it produces a piece of equipment. And if that machine has some automatic feature, or is used in something else that is automatic, then a person can conceivably place it in an all-encompassing category of "automated production equipment." This reductionist approach, however, is untenable.

Absent substantial leaps of the imagination, the Court cannot connect "Automated Production Equipment" to circuit board repair. Indeed, the evidence would suggest that the name is an arbitrary jumble, chosen not to describe anything, but because it created a catchy acronym. [ECF No. 72, p. 5]. But the Court need not go so far here. At least at the summary judgment stage, Defendants have not demonstrated that "Automated Production Equipment" is merely descriptive.

Based on this ruling, the Court need not decide whether the APE marks carry "a meaning distinct from the underlying words in the mind of the public." *Welding Servs.*, 509 F.3d at 1359. In any event, Defendants would not win summary judgment on this issue either. In *Welding Services*, there existed only one piece of evidence showing that the generic name and its abbreviation were used together in the plaintiff's website. *Id.* at 1360. But in this case, Plaintiff presented evidence showing that, in *several* instances, the APE marks were used in advertisements and products without the accompanying "Automated Production Equipment" name. [ECF No. 72–1, pp. 8–24]; *see, e.g., FN Herstal*, 838 F.3d at 1085–86.

19

In conclusion, the Court **denies** Defendants' summary judgment motion and motion to strike Ian Scheu's declaration.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 22, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE