**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-10147-CIV-GOODMAN**
**[CONSENT CASE]**

SCHEU & SCHEU, INC.,

Plaintiff,

v.

CASEY SCHEU, VERONICA SCHEU,
and APE.COM, LLC,

Defendants.
_______________________________________/

**ORDER DENYING MOTION TO DISMISS STATE LAW CLAIMS**

In "Never Let Her Go," a song from Florida Georgia Line's first EP, the country-music duo lamented, "How she got gone when I never let her go."[1] Similarly, federal courts can also refuse to let go -- of state law claims that form part of the same case or controversy as federal law claims, but with better results, so long as no exceptions apply.

Here, Defendants Casey Scheu; Veronica Scheu and APE.com, LLC contend that the Court *should* let go of the state law claims against them because two exceptions exist under 28 U.S.C. § 1367(c). Specifically, Defendants argue that the Court, in its discretion,

---

[1] FLORIDA GEORGIA LINE, *Never Let Her Go*, *on* ANYTHING LIKE ME (Arista Nashville 2010).

should decline to exercise supplemental jurisdiction over those claims because they substantially predominate over the federal law claims, or alternatively, dismiss the state law claims after granting summary judgment in Defendants' favor on the federal law claims. [ECF No. 62].

Because the Court has already denied summary judgment as to the federal law claims [ECF No. 84], it will not address that ground for dismissal. As to the other ground, for the reasons discussed below, the Court **denies** Defendants' motion to dismiss.

## I. Background

On August 11, 2015, Plaintiff sued Defendants, bringing 10 counts stemming from various purported transgressions against Plaintiff's trademarks, internet domains, and business in general. [ECF No. 1]. Plaintiff alleged that it has been in the business of circuit board repair and related services for a long time under various trademarks -- APE and A.P.E. -- and for a relatively shorter time, under similar domain names -- APE.com, etc. [ECF No. 1 ¶ 9]. Plaintiff alleged that two of its former officers -- Defendants Casey Scheu and Veronica Scheu -- secretly incorporated a competing company bearing the same name as the protected marks -- Defendant APE.com, LLC -- and then, among other things, improperly transferred Plaintiff's domains to the competing company. [ECF No. 1 ¶¶ 17–19].

Two claims arise under federal statutes. Under Count I, Plaintiff brought a claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq*. [ECF No. 1, pp. 7–9]. Under Count IV, Plaintiff brought a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), § 1125(d). [ECF No. 1, pp. 12–13].

The remaining six claims against Defendants arise out of state law. They include (1) common law trademark infringement (Count II); (2) common law unfair competition (Count III); (3) breach of fiduciary duty (Count V); (4) conversion (Count VI); (5) intentional interference with advantageous business relationships (Count VII); and (6) civil conspiracy to intentionally interfere with advantageous business relationships (Count VIII). [ECF No. 1, pp. 9–12, 13–18]. Two other state law claims against a different defendant were voluntarily dismissed. [ECF No. 23].

On April 10, 2017, Defendants moved for summary judgment on both federal law claims. [ECF No. 61]. The Court denied summary judgment. [ECF No. 84].

Also on April 10, 2017, Defendants filed a motion to dismiss the state law claims. [ECF No. 62]. Plaintiff filed an opposition response. [ECF No. 71]. Defendants did not file a reply.

The matter is specially set for a four-day trial, in Key West, Florida, beginning July 24, 2017. [ECF No. 40].

## II. Legal Standard

As codified in § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" § 1367(a). Under § 1367(c), however, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim" on various grounds. § 1367(c). The ground implicated here is under subsection (c)(2) -- where "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[.]" § 1367(c)(2).

"The exercise of supplemental jurisdiction is left to the discretion of the district court[.]" *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1304 (11th Cir. 2016).

## III. Analysis

### A. Substantial Predominance

As the Eleventh Circuit has explained, there is a difference between the Court's "**power** to exercise supplemental jurisdiction, § 1367(a), and its **discretion** not to exercise such jurisdiction, § 1367(c)." *Milan Exp., Inc. v. Averitt Exp., Inc.*, 208 F.3d 975, 980 (11th Cir. 2000) (internal quotations omitted) (emphasis added). Here, Defendants do not argue that the Court lacks the power to exercise supplemental jurisdiction under § 1367(a). Although they denied Plaintiff's supplemental-jurisdiction allegation in the Complaint [ECF Nos. 1 ¶ 7; 10 ¶ 7], Defendants never argue that the federal law

claims and state law claims do not "form part of the same case or controversy." § 1367(a). They also do not argue that the federal and state law claims do not "arise out of a common nucleus of operative fact[,]" which is the standard for determining whether the claims form part of the same controversy. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

Rather, Defendants argue that the Court should decline exercising its discretion under § 1367(c)(2), because the state law claims "would substantially expand the scope of this pending lawsuit beyond what would be necessary and relevant to the resolution of the federal claims[.]" [ECF No. 62, p. 8]. "Substantial predominance exists 'when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage.'" *Morgan v. Christensen*, 582 F. App'x 806, 808 (11th Cir. 2014) (quoting *Parker*, 468 F.3d at 744). As authority for their arguments, Defendants rely heavily on two district court decisions outside our circuit: *TransCardiac Therapeutics, Inc. v. Yoganathan*, 85 F. Supp. 3d 1351 (N.D. Ga. 2014); and *Beard v. Netco Title, Inc.*, No. CIV. 05-40252, 2005 WL 2072055 (E.D. Mich. Aug. 26, 2005).

The Court disagrees with Defendants' position. Plaintiff's Lanham Act claim and ACPA claim are not "appendages" of its state law claims. The crux of this dispute -- at least as the Complaint frames it -- is that former officers of Plaintiff usurped its protected trademarks by forming a competing company bearing a protected name and also by taking over related domain names. Distilled to its essence, this is a trademark

infringement and unlawful competition case. The former is a creature of federal statute, and the latter is analyzed by the same rubric. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.").[2] Thus, Plaintiff's Lanham Act claim and ACPA claim are not "appendages" of the state law claims.

The authorities Defendants rely on are readily distinguishable and unpersuasive. In *TransCardiac*, the plaintiff brought "a host of state law claims, for breach of contract, interference with business relations, fraud, conspiracy, and false advertising[,]" that "arose from Defendants' purported bad faith conduct and breach of contracts" relating to a patent portfolio. 85 F. Supp. 3d at 1353. The plaintiff alleged that the defendants "concealed and supported a competing startup, improperly disclosed to that startup some confidential information concerning IP that is or should be within the [portfolio], and ran a misleading public information campaign seeking to portray the individual Defendants as the owners and inventors of [the] IP." *Id.* The defendants removed the case, but the matter was then remanded because the "Complaint did not sufficiently implicate issues of patent inventorship and thus failed to establish federal jurisdiction under 28 U.S.C. § 1338(a)." *Id.* at 1352.

---

[2] Plaintiff's common law trademark infringement claim also undergoes the same analysis as a federal trademark infringement claim. *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

After that inauspicious start, the defendants brought counterclaims and third-party claims for declaratory relief regarding ownership of two patents "that had never before been mentioned by name in the lawsuit and which were not part of [the] portfolio[.]" *Id.* at 1353. They then removed the case again, seeking "federal jurisdiction over the entire case based on their counterclaims [] and third-party claims[.]" *Id.* at 1353–54.

The U.S. District Court for the Northern District of Georgia first found that the "nine state law claims [did] not fall within the supplemental jurisdiction of [the] Court under § 1367(a) because they [did] not arise out of a common nucleus of operative fact with the Third–Party claim for a declaration of patent inventorship." *Id.* at 1355. Then the court found that even if § 1367(a) gave it the power to confer supplemental jurisdiction, the court would nonetheless decline to take on the state law claims because the "nine state law business tort and contract claims substantially predominate[d] over the central, narrow issue of patent inventorship in the surviving third-party claims." *Id.* at 1356–57.

Here, Defendants do not even argue that the Court lacks the power to exercise supplemental jurisdiction under § 1367(a). While there is a difference between the Court's power under § 1367(a) and its discretion under § 1367(c), *Milan*, 208 F.3d 975, logically, a matter whose federal and state law claims do not even share a common nucleus of operative fact, and that contains many more state claims than federal claims,

is more likely to fall under the § 1367(c)(2) exception. That is not the case before the Court.

Moreover, trademark infringement and cybersquatting are not narrow issues in this case. It is obvious that the *TransCardiac* declaratory judgment claims concerning patent ownership were stuck unto a non-federal dispute to produce a basis for removal. But here, the ownership and use of trademarks and related domain names lies at the core of the parties' dispute. Thus, *TransCardiac* is not analogous to this case.

In *Beard*, the plaintiff filed a complaint on August 12, 2005, alleging two claims for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and several state law claims for fraud, conversion, negligent misrepresentation, and negligence. 2005 WL 2072055, at *1. Two weeks later, the U.S. District Court for the Eastern District of Michigan dismissed the state law claims, finding that they substantially predominated over the RICO claims because the state law claims "would substantially expand the scope of this case beyond that necessary and relevant to the federal claims under RICO." *Id.* Moreover, the court concluded, without giving an explanation, that "judicial economy, convenience, fairness, and comity counsel against exercising supplemental jurisdiction in this case." *Id.* Those are factors set forth in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), which the Undersigned discusses later.

The lack of analysis in *Beard* makes it an unlikely candidate for persuasive authority. The substance of the dispute in that case is not revealed, making it difficult to ascertain what is the "appendage" and what is the body of those proceedings. And that is especially true of its unelaborated application of the *Gibbs* factors. Although one important distinction is readily apparent: while the *Beard* claims were dismissed just two weeks after their inception, the Defendants here waited approximately a year and eight months to seek dismissal of state law claims. More on that point later.

In addition, as the Court has already concluded, the federal claims in this case arguably encompass the crux of the present dispute. Although some state law claims will certainly require proof of different legal elements, the facts presented at trial will likely remain unchanged even after a dismissal. In short, the *Beard* case does not convince the Court to dismiss Plaintiff's state law claims.

### B. The *Gibbs* Factors

"Prior to the enactment of § 1367, the United States Supreme Court held that a decision to exercise or decline supplemental jurisdiction lay in 'considerations of judicial economy, convenience[,] fairness to litigants,' and comity." *Ingram v. Sch. Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). The *Gibbs* factors, as they have come to be known, survived the codification of § 1367. *Id.* "As a result, in a case where § 1367(a) justified taking jurisdiction over a state claim but one of the adverse elements of § 1367(c) was

present, the court could exercise supplemental jurisdiction over that claim, after considering the *Gibbs* factors." *Id.*

Here, Defendants provided virtually no substantive application of the *Gibbs* factors. Defendants' whole argument is as follows:

> consideration of the "Gibbs factors" weighs in favor of dismissal. Specifically, there is already an action pending in state court, and in the interest of judicial economy, all claims arising out of the same common nucleus of facts should be resolved in the same forum. Further, Plaintiff would not be prejudiced by the dismissal, as Plaintiff may simply file an action in the 16th Judicial Circuit in and for Monroe County, and may even do so within the pending action.

[ECF No. 62, p. 9]. These terse reasons are not convincing.

As Plaintiff points out, "the parties have already conducted extensive discovery, are in the process of scheduling and completing the depositions of the parties and non-parties, and are preparing for the upcoming trial in July." [ECF No. 71, p. 6]. Because of the amount of effort and time expended by the litigants and the Court in developing this case up to the trial level, judicial economy considerations weigh *against* dismissal. *See Pilkington v. United Airlines, Inc.*, 921 F. Supp. 740, 748 (M.D. Fla. 1996) (retaining jurisdiction over state law claims after applying the *Gibbs* factors, explaining that "an extensive amount of discovery has taken place, and the amount of time and effort expended by the Court and the litigants in developing this case to this point has been substantial.").

It would also be highly inconvenient and unfair to the parties if they were forced to litigate the state law claims in a separate forum when they are a few short weeks from trial. This case has been pending since August 11, 2015. [ECF No. 1]. Defendants did not move to dismiss the state law claims until April 10, 2017. [ECF No. 62]. Although Defendants can challenge subject-matter jurisdiction at any time, their delay tips the *Gibbs* factors in Plaintiff's favor. *See Wise v. City of Lauderhill*, No. 15-60686-CIV, 2016 WL 3747605, at *3 (S.D. Fla. July 13, 2016) (denying motion to remand even after the only federal law claim had been dismissed, explaining, "The Court has ruled on a substantive motion to dismiss, the parties have undergone the entirety of the discovery period, interrogatories have been exchanged, the plaintiff's deposition has been taken, and trial is set to begin in approximately two months.").

Moreover, while Defendants claim that a similar lawsuit is already pending in state court, into which the dismissed claims would presumably be joined [ECF No. 62, p. 8], Plaintiff disputes that the lawsuit is similar to the proceedings here. [ECF No. 71, p. 6]. The Undersigned has no other facts to evaluate who is right or wrong in that regard and no knowledge whatsoever as to the pendency of the state case. Defendants have not provided countervailing reasons to decline trying the state law claims here given the inconvenience dismissal will likely bring.

Lastly, Defendants do not explain how considerations of comity mandate or justify dismissal. It is true that comity generally dictates that a state court judge is better

equipped than a federal court judge to resolve state law issues. *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1292 (S.D. Fla. 2012). But in this case, federal principles govern two of the state law claims. *Gift of Learning Found.*, 329 F.3d at 802. The Court is more than capable of resolving the remaining state law claims, which no party maintains are novel or complex. And, on balance, the comity factor does not outweigh the other *Gibbs* factors, which greatly tip in Plaintiff's favor.

In conclusion, the Court **denies** Defendants' motion to dismiss Counts II, III, V, VI, VII, VIII of Plaintiff's Complaint.[3]

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 28, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[3] Compare the (albeit somewhat repetitive) lyrics from the song "Never Let Me Go" by English indie rock band Florence & The Machine: "Never let me go / Never let me go / Never let me go / Never let me go." FLORENCE & THE MACHINE, *Never Let Me Go*, *on* CEREMONIALS (Island 2011).